<hr />

## WALSH vs. HOMER.

1. It is no deviation, so as to make the owners liable for a loss for a steamboat to stop on her voyage to aid another boat in distress, even though there may be no danger of any loss of life.

2. Evidence that it is usual and customary for one boat on a voyage, to stop and aid another boat in distress, is competent to shew that such is not a deviation.

3. In an action against the owners of a boat for a loss occasioned by the sinking of the boat, after a deviation, it is not necessary to prove that the deviation caused the loss. It is sufficient to shew the deviation, and subsequent loss.

4. What constitutes a deviation depends upon the nature of the voyage, and the usage of the trade.

Settle & Bacon vs. Perpetual Ins. Co. 7 Mo. Rep. 379, in part overruled.

## APPEAL from St. Louis Circuit Court.

GAMBLE & BATES *for Appellants, insist:*

1. The admission of the testimony objected to by the defendant below, was wrong.

It was wholly based upon entries made in books, and bills and memoranda made by others. And no evidence of the character of the documents, and the persons who made them, was produced nor accounted for,—and in one deposition (Faulkner's) he speaks of marks upon packages without any means of knowledge whatever.

See 1 Phil. Ev. 263-4-5.—1 Greenlief Ev. section 117, &c., and more particularly sections 50, 51, page 61—and as to *onus probandi,* ib. p. 89, §74, &c.

2. The plaintiff could not recover on either of the first three counts of his declaration, without proving that the loss of the Rolla, (and consequent loss of the goods,) was occasioned by the stopping to aid the Collier. And if this be so, it follows that the Court erred in refusing the defendant's first four instructions.

3. The relation between the plaintiff and the defendant, arising from the contract of affreightment, and the relation between the plaintiff and the Insurance Company, arising from the contract of insurance, are separate and distinct—they have no relation with, or bearing upon each other, and present subjects of entirely disconnected causes of action.

4. The plaintiff has not sued to recover damages for the destruction or avoidance of the policy of insurance, *as a substantive independent cause of action:* and surely he cannot recover for the avoidance of the policy as consequential on, or in aggravation of, the loss of the goods.

5. If we disregard all that appears in the record about insurance, *then* the record shews a plain case for the defendants, on the plaintiff's contract with them, as *carriers.*

6. The giving of the instructions asked by the plaintiff, and the refusal of the 5th instruction asked by the defendant, was wrong, because—

1st. The stopping of the Rolla to aid the Collier in distress was not a deviation.

2nd. If in its nature it were a deviation, still it was justified by usage, and so did not avoid the policy; and still less did it charge the defendants as carriers, having no concern in the policy.

3rd. If it were a deviation, and did avoid the policy, still the plaintiff had no right *on that account,* to recover the value of the goods in this action.

7. A new trial ought to have been granted because wrong instructions were given, and right instructions refused, and improper testimony admitted.

GEYER & SPALDING *for Appellee, insist:*

1. The detention and employment of the Rolla, in the attempt to relieve the Collier, by removing cargo therefrom, (there being no life in danger,) was a deviation that discharged the underwriters on the cargo of the Rolla from liability for subsequent loss. Settle & Bacon vs The Perpetual Insurance Company, 7 Mo. Rep. 379.—1 Phil. on Ins. 485. Williams vs. Box of Bullion, 6th Law Reports 363.—1 Phil. on Ins. 513, 530-1.

2. The usage or custom attempted to be established at the trial does not change the rights of the parties. It could not and did not operate to charge the insurers in Settle & Bacon vs. Perpetual Insurance Co. where it was specially pleaded, and cannot discharge the carriers. Collins vs. Hope—3rd Wash. Cir. C. R. The Reeside, 2nd Sumner 569, Macomber vs. Parker, 13 Pick.

182. Sampson vs. Gazzan, 6 Porter 123. Winthrop vs. Union Ins. Co. 2nd Wash. C. C. R. 7. Rankins's Amer. Ins. Co. 1 Hall, 619, 2nd Barrows 1216. Renner vs. Bank of Columbia, 9 Wheaton, 591. The usage of no class of men can be sustained in opposition to established principles of law. 10 Mass. 29—2 Johns R. 335—2d Wash. C. C. R., 7, 24.—1 Hall, 602, 619.—6 Pick, 131—7 Mo. R. 379.

3. The change made by the Insurance Offices in their form of Policy on cargo, after the decision of the case of Settle & Bacon vs. Perpetual Ins. Co., cannot aid the appellants, neither as a recognition of the usage relied on, nor as a justification of a deviation in a previous voyage. The insurers which were themselves discharged by reason of the deviation could not if they would, transfer the loss from the carriers to the insured. They have, however, not presumed so far as to modify pre-existing contracts, nor ventured in any degree to change the law of insurance. The clause referred to itself proceeds upon the assumption that the underwriters are discharged and the carriers rendered liable by the deviation—and proposes nothing more than to take upon the insurers the trouble and expense of prosecuting the carriers.

4. The underwriters being discharged by the act of the Master, without the assent of the insured, the owners are rendered liable for the loss—as common carriers. Owners of steamboats carrying freight for hire are common carriers, and subject to their liabilities. Allens vs. Sewell, 2 Wend. 327. Bank of Orange vs. Brown, 3 Wend. 158. Steamboat Co. vs. Bason Harper, 262. Story on bailments, 322, §495. They are liable for every injury happening to property entrusted to their care, unless it be caused by inevitable accident, by public enemies, or by the act of the owner of the property. Cott vs. McMahan, 6 Johns. 160. Kemp vs. Caughty, 11 Johns. 107.

5. It is part of the contract of the carrier by water to pursue the voyage in the most direct and safe course, and in the most expeditious manner as far as consistent with safety. If he deviates, underwriters are discharged from, and the carriers liable for, subsequent loss, even from inevitable casualty ; for under such circumstances the loss is traced back through all the intermediate causes to the first departure from duty. Story on Bailment, §509. Cropley vs. Ketch, 12 C. R. 410. Davis vs. Garrett, 6. Bingham, 716.—1 Phil. Ins. 485-6. 21 Wendell, 190.—1 Smith's leading cases, 178, 182. Lawrence vs. McGregor, Wright, 193.

6. The owner of a vessel is liable for all acts or omissions of the Master whereby a loss happens to the shipper. 1 Wash. C. C. 17. And in every case of loss the burthen of proof is on the carrier to shew that no care could have prevented the loss. Murphy vs. Staton, 3 Monford, 239. Bell vs. Reed, 4th Binny, 127. Turney vs. Wilson, 7th Yerger, 340. In this case the deviation occasioned a loss to the shipper in discharging his Policy, upon which, but for the deviation, he might have recovered, and the loss so occasioned was the consequence of the act of the Master of the Rolla.

7. Even if the goods had not been insured, it would not have been necessary for the plaintiff to prove that the loss was actually occasioned by the deviation as asserted by the defendants in the refused instructions, because in such case the loss is traced back through all intermediate causes to first departure from duty. Story on Bailment, §509. A deviation is in effect a substitution of another voyage for that contracted for—1 Douglass, 291. 4 Mass. 338. In a case, therefore, of a loss of goods not insured, the shipper sueing the carrier, though he must aver the loss to have been occasioned by the deviation—sufficiently supports that averment by proof of deviation and subsequent loss, the law imputing the loss to the deviation : and the most that the carrier can claim in such case, is, that he may repel this *prima facia* case by proof that the deviation did not, and could not in any wise have contributed to the loss.

8. In this case, it was not necessary for the plaintiff to aver or prove that the loss of the goods ~~was directly~~ occasioned by the deviation, or that the misconduct of the Master is in any wise was ~~...~~ connected with the subsequent loss. The action is brought by the shippers to recover for the injury they have sustained in the discharge of their Policy by the act of the Master. And the actual loss or destruction of the goods is no otherwise material, than as it shews with other facts, that but for the deviation the shippers might and would have been indemnified by the insurers.

The gist of this action then is, the loss of remedy on the Policy by the act of the Master, and all that it was necessary for the plaintiffs to aver, and prove, was the insurance and shipment of the goods, the deviation and subsequent loss by a peril insured against. All this is distinctly averred, and conclusively proved at the trial.

9. There is no averment in the declaration that the loss of the goods was actually occasioned by the deviation, as contended by the defendants. The allegation is, that by reason of the deviation the Rolla was exposed to storms and other perils, and then and there was run and driven upon a snag, &c., by means whereof the goods were wetted, &c. The loss is here stated to have been after, not that it was *occasioned by the deviation.* The loss is imputed to the snagging and sinking of the vessel : and all that is imputed to the deviation is the exposure to storms, &c., (the conclusion of law from the facts stated,) and the discharge of the underwriters, also a conclusion of law.

10. Even if it be assumed that the first three counts do charge the loss of the goods to the deviation, it was not necessary to connect the loss with the deviation as supposed by the refused instructions. Because, first, the averment is supported by proof of the deviation, and subsequent loss. Story on Bailment, §509. Davis vs. Garret, 6 Bing. 716. And, second, the averment is immaterial, and need not be proved : the gist of the action being the loss of the remedy on the Policy, all that was necessary to aver or prove, was, the insurance and shipment of the goods, a deviation, and subsequent loss under such circumstances, that but for the deviation the insured would have been entitled to indemnity from the underwriters : (see authorities above cited.) All other averments, and especially that referred to, may be regarded as immaterial, and not necessary to be proved. Leslie vs. Wilson, 3 Brod & Bing. 171. (E. C. L. R. 7, p. 395.) Bramfield vs. Jones, (E. C. L. R. 10, 362.) (4 B. & C. 380.) Wilson vs. Cadman's Ex'r. 3 Cranch 193. Williams vs. Allison, 2 East. 446.

11. The evidence objected to at the trial was competent, and therefore properly admitted. That it was not in itself sufficient to prove all the facts necessary to establish the shipment of the goods may be true, but that is an objection to sufficiency, not competency. If after all the testimony of the plaintiff was concluded, it was desired to test the sufficiency of the evidence, or any one fact, it was the duty of the defendants to move appropriate instructions, as was in fact done in reference to the testimony of one witness (Walcott) in the second instruction given at their prayer: and their first instruction covers all cases of insufficiency touching shipments.

SCOTT, J., *delivered the opinion of the Court.*

This was an action on the case brought in the St. Louis Circuit Court by the appellee as surviving partner of the firm of J. & T. J. Homer, against the appellants, as owners of the steamboat Rolla, to recover for the loss of certain goods shipped on board that boat at New Orleans. The verdict and judgment were in favor of the plaintiffs below, and the cause is brought into this Court by appeal.

The first count of the declaration sets forth a Policy of insurance on goods of the plaintiff made by the St. Louis Perpetual Insurance Company, and alledged that goods covered by the policy were shipped on board the Rolla, of which the defendants were the owners, at New Orleans, to be transported to St. Louis. That during the voyage, the Master of the Rolla deviated, &c., and detained and employed the boat with

the goods of the plaintiff on board, in relieving the steamboat George Collier, which was aground in the Mississippi, and in transporting goods from the Collier to the shore no life being in danger. And that although the Rolla did after such detention, &c., proceed in the voyage with the goods on board, yet the said steamboat Rolla, with the said goods and merchandize, by reason of the said defendants, their servants and agents in that behalf, not proceeding therewith from New Orleans aforesaid to St. Louis aforesaid, as soon as they were reasonably able, by and according to the direct, usual, and customary way and passage, but on the contrary thereof, deviating, departing, touching or remaining, continuing and being delayed, as in that behalf aforesaid, and before her arrival at St. Louis aforesaid, at the county aforesaid, was exposed to, and assailed by storms, and other perils, in the river Mississippi, near a certain island called Island No. 21, and then and there was run and driven on a snag, or other hard substance, and was wrecked, shattered, and broken, by means whereof the same goods, &c., of plaintiff, on board said boat, were wetted, damaged, spoiled and sunk, and wholly lost to the plaintiff, and by reason of the said deviation, departure, detention and stoppage of the said steamboat Rolla, with the said goods, &c., on board, by the defendants, their servants and agents, as in that behalf aforesaid, the said insurers in the said Policy of insurance mentioned, became and were discharged from all liability for, or on account of, the said damage and loss, or any part thereof.

The second and third counts are in substance the same as the first. The fourth count is in the ordinary form against carriers for the loss of goods, averring that the defendants did not safely and securely carry and deliver the goods according to their undertaking, but on the contrary so improperly behaved and conducted themselves with respect to said goods, that by and through the mere negligence, misconduct, and default of the defendants, their servants and agents, the goods were lost.

The defendants pleaded not guilty. At the trial, the plaintiff gave in evidence the Policy of insurance, and the endorsements thereon, and offered evidence conducing to prove the shipment of goods, covered by that Policy, on board the Rolla, at the time and for the voyage mentioned. Parts of the evidence on this point were objected to, but the objections were overruled. That George Taylor was the Master, and the defendants owners of the boat, that on the progress of the voyage the Rolla was detained and employed in relieving the Collier, then aground, by transporting goods from that vessel to the shore, and in at-

tempting to pull her off the bar by the power of the Rolla. That the Rolla afterwards proceeded on the voyage, and was wrecked, as alleged, and the goods of the plaintiff lost.

Witnesses testified that from the commencement of steam navigation on the western waters, it had been the uniform usage and custom of all boats when meeting another boat aground, to afford any assistance in their power, and although it was the uniform practice to charge for such service, yet no stipulation for such compensation was made before furnishing the aid required. This usage was generally known to merchants and insurers.

It was proved that after the opinion of this Court in the case of Settle & Bacon vs. The St. Louis Perpetual Insurance Company, 7 Mo. Rep., 379, the different insurance companies at St. Louis inserted in their Policies, a clause to the effect that in case of loss after deviation to give succor to a vessel in distress, the loss should be paid notwithstanding the deviation, " upon the assured assigning to the Company all claims he or they may have against the owners of such steamboat in consequence of such deviation, and authorizing the Company to use his name to enforce such claim for the benefit of the Company."

The plaintiff moved the Court to give to the jury the following instructions, which were given, to which the defendant excepted, viz :

" If the jury find that goods of the plaintiff covered by the Policy in the declaration mentioned were shipped on board the steamboat Rolla at New Orleans, to be carried to the port of St. Louis, that said boat departed from New Orleans on said voyage with the said goods on board, and that during the voyage said steamboat Rolla, with said goods on board, was stopped and detained without the consent of the plaintiff, for the purpose of assisting the steamboat George Collier, then aground in the Mississippi river, and that the Rolla was there used and employed in transporting cargo from the Collier to the shore, and in attempting to draw the said Collier into deeper water, such detention and employment was a deviation, which discharged the underwriters from any subsequent loss of said goods on board the Rolla, during that voyage.

" If the jury find from the evidence, that goods of the plaintiff covered by the Policy in the declaration mentioned, were shipped on board the steamboat Rolla at New Orleans, to be carried to St. Louis, that said goods during the voyage were lost by a peril insured against, and that the underwriters were discharged from liability for such loss, by reason of the previous deviation of said boat by the voluntary act of the Master, then the owners of the Rolla are liable for such loss."

The defendant then asked the following instructions, which were refused, to which an exception was taken, viz:

" That the jury must find for the defendants on the three first counts in the declaration, unless they find from the evidence that the loss of the goods and merchandize in those counts mentioned, was actually occasioned by the alleged deviation from the usual course of the voyage in said counts mentioned respectively.

" The plaintiff cannot recover on the first count in his declaration for the loss of the goods therein mentioned, unless it appears to the satisfaction of the jury from the evidence, that the sinking of the steamboat Rolla was occasioned by the alleged deviation in that count mentioned.

" That the plaintiff cannot recover on the second count of his declaration for the loss of the goods therein mentioned unless it appears to the satisfaction of the jury from the evidence, that the sinking of the steamboat Rolla was occasioned by the alleged deviation in that count mentioned.

" That the plaintiff cannot recover on the third count of his declaration for the loss of the goods therein mentioned, unless it appears to the satisfaction of the jury from the evidence, that the sinking of the steamboat Rolla was occasioned by the alleged deviation in that count mentioned.

" That if the jury find from the evidence that, at the time of the loss of the Rolla, there was, and for many years previous had been, a custom, and usage, in the navigation of the Mississippi river, for steamboats navigating said river to stop in their voyages, and furnish assistance to other steamboats aground in said river, and in distress, and that such custom and usage was general, and generally known to merchants, owners of boats and insurers concerned in the navigation of said river, and that the captain and crew of the steamboat Rolla, in the alleged deviation to succor the steamboat George Collier, aground in the Mississippi river, did no act, and suffered no detention of said steamboat Rolla, beyond or out of the said custom and usage, then the defendants are not responsible for any act of the said captain, or crew, which is within said custom or usage."

The principal question in this cause was before this Court in the case of Settle and Bacon vs. The St. Louis Perpetual Insurance Company, 7 Mo. Rep., 379. In that suit, the Policy of insurance was executed by the same company, the shipment was for the same voyage, on the same vessel, and the loss by the same disaster as is alleged by the declaration

in this case.   In the above mentioned cause the point most debated was whether the detention of a vessel in the navigation of the Mississippi for the purpose of succoring another vessel in distress, when no life was in danger, was a deviation or not.   Except in the case mentioned, it does not appear that this question has come up for adjudication.   Eminent Judges, and elementary writers, influenced by the benevolence and humanity of our law, have not hesitated to declare that a detention on a voyage at sea to relieve a vessel in distress, is not an act which would discharge the underwriters to a Policy of insurance, from the liability to the assured, in the event of a loss of the vessel affording the succor. Some have said that a deviation to save life or to succor persons in distress was allowable, but that a deviation for the purpose of saving property would discharge the underwriters.   On our rivers, boats may be in danger when the lives of the crew and passengers are entirely safe, but in ocean navigation a vessel can scarcely be in distress, unless the lives of those on board are at the same time endangered.   Hence the language of the books, that a detention to succor a vessel in distress is not a deviation that would discharge the underwriters.   Judge Sprague, who maintained the doctrine that a stoppage to succor vessels in distress is not a deviation which would discharge a Policy, yet holds, that under the pretence of succoring distress, it was not allowable to become wreckers at the risk of the insurer.   So Judge Washington, 2 Wash. C. C. Rep. 84, says: " the general definition of deviation, is, a voluntary departure from the course of the voyage insured, without necessity or reasonable cause, and I recollect no case where the justification is not essentially connected with the motive of safety to the property insured. If the object of the deviation be to save the life of a man, I will not be the first judge to exclude such a case from the exceptions to the general rule."

In the case of Settle & Bacon vs. The St. Louis Perpetual Insurance Company, it was admitted that no life was in danger, and of the two questions in that case, whether a detention to relieve vessels in distress, when no life was in danger, would discharge a Policy; and, whether there was a usage in the inland navigation of our rivers, which would justify a deviation for such a purpose ; the first was most elaborately argued at the bar, and it did appear that it was the turning point of the cause.   I am not prepared to say that the conclusion to which this Court arrived on the former of these questions, was erroneous.

In adopting the form of the Policies used in Marine Insurances, it

must have been understood that they should receive their long accustomed interpretation. No case, I imagine, can be found in the law of Marine Insurance in which it was held that a deviation to assist a vessel as little exposed as the Collier, was a justifiable deviation. Contracts of insurance are said to be *uberri malæ fidei.* The vessel and cargo are in the possession and under the control of persons who, relying on the Policy for an indemnity against losses, are stimulated to acts which the dictates of self-interest would effectually restrain, while those who are mostly interested in their preservation, and are liable to make good any losses that may occur, are at a great distance. Any latitude of discretion allowed to Masters of vessels under such circumstances, would lead to the grossest frauds on underwriters. The reasons which govern in moulding the law in relation to the responsibility of common carriers, lie at the foundation of the rule prescribing the duties of the Masters of vessels in respect to those who have made themselves responsible for their loss by insurance. The law fixing the responsibility of common carriers, is, as Lord Holt observes, " a politic establishment, contrived by the policy of the law for the safety of all persons, the necessity of whose affairs obliges them to trust these sorts of persons, that they may be safe in their dealings. For else these carriers might have an opportunity of undoing all persons that had any dealing with them, by combining with thieves, &c., and yet doing it in such a clandestine manner, as would not be possible to be discovered, and this is the reason the law is founded upon, in that point." The law requires that a voyage should be performed with all practicable, safe, and convenient expedition. The impossibility in many cases of determining whether a subsequent loss has been caused by a previous detention, is the reason that vessels insured are not permitted at the risk of the insurer to stop on their voyages, unless in cases of necessity. A very short detention may be the cause of the loss of a vessel, and yet the keenest attention will not be able to detect and expose the train of incidents which connect the two events. Hence it has always been settled that a departure from the usual course of a voyage, or a detention during it without necessity, or justifiable cause, was an act which would discharge the underwriters in the event of a subsequent loss. By the terms of the contract, the insurer only runs the risk of the voyage agreed upon, and of no other. It is a condition implied in the Policy, that the ship shall proceed to her port of destination by the shortest and safest course, and with all practicable, safe, and convenient expedition ; and if the assured deviated or stopped

on the voyage without necessity or a justifiable cause, it is a breach of the implied warranty, the effect of which is to discharge the underwriters from all subsequent responsibility, not because the risk is thereby increased, but because the insured had, without necessity, substituted another voyage for that which was insured, and thereby varied it. By the contract, the voyage is to be performed with all practicable speed. After a detention, the vessel at any time during her subsequent voyage is at a different place from that at which she would have been had it not been for the dentention. Had she been at the place where a speedy voyage would have taken her, the combination of circumstances which occasioned the loss might not have taken place. The agency this circumstance had in producing the event may be unknown, and as the Master cannot show that it had none, there is no hardship in making him suffer the consequence, as his unjustifiable act may have been the cause of it.

The foregoing principles are applicable to insurances on voyages exempt from the control of any custom or usage; but the courts all concur in the opinion that when the insurance is described to be on a particular voyage, the meaning of this description as well as the language used by the parties in other parts of the Policy, must be ascertained by its general acceptation and the *common usage.* The meaning of the parties is to be presumed to be, that the voyage is to be pursued in the most direct and safe course, and the adventure conducted in general in the most expeditious manner, as far as is consistent with safety, and if there be any departure from such course, or mode of conducting the adventure whereby the risks insured against are varied or increased, it behoves the assured to justify such departure by showing a *usage* in that respect, or a reasonable necessity for it. Phil. on Ins. 1, 480. Chancellor Kent remarks, that one cause of litigation in the courts on the subject of deviation is as to the facts and circumstances which will be sufficient to justify it, on the ground of usage or necessity. 3 Com. 312. Where there is a known usage, as to the course, or touching at particular ports, or any thing else in the conduct of the voyage, the parties are supposed to be acquainted with such usage, and have it in view when they enter into the contract. 1 Phil. on Ins. 489. In the case of Noble vs. Kennoway, Doug. 513, Lord Mansfield said "every underwriter is presumed to be acquainted with the practice of the trade he insures, and that, whether it is recently established or not. If he does not know it, he ought to inform himself. It is no matter if the usage has only been for a year."

The Supreme Court of the United States, in the Columbia Insurance Company against Catlett, 12 Whea. 386-7, says, that the true meaning of a Policy is to be sought in an exposition of the words with reference to the known course and usage of the trade. The parties must be supposed to contract with a tacit adoption of it as the basis of their engagements. Without question, any unreasonable delay in the ordinary progress of the voyage, avoids the Policy on this account. *But what delay will constitute such a deviation, depends upon the nature of the voyage and the usage of the trade.* In the case of Clark vs. The United Marine and Fire Insurance Company, 7 Mass. Rep., 365, Judge Sewall says— " that questions are continually arising on the operation and practical construction of Policies of insurance, a species of contract liable to a variety of incidents, and to be enforced in a great number of cases distinguishable from each other in the principles applicable to the decision. For rules to govern in these enquiries, there is more than ordinary reference to established usages, and these when ascertained and found to be suitable applications of general principles, or not inconsistent with them, or with the tenor of the contract to be explained and enforced, are considered as authoritative upon the parties. A reference to usage is fairly implied in contracts of a commercial nature, and is to be presumed, indeed, in the construction of contracts generally, where the conclusion is not avoided by special circumstances or stipulations." In the case of Gordon & Walker vs. Little, 8 Serg. & Rawle, 562. Judge Gibson, who denied that evidence of usage or custom fixing the construction of the words in a bill of lading is admissable, fully recognizes the relaxation of the common law rules of evidence in the case of a Policy, and admits that the usage of every particular trade necessarily enters into every Policy, and is resorted to for the purpose of explaining, and even controling, those parts of the instrument that are merely formal.

These instances are sufficient to show that the construction of contracts of insurance are peculiarly influenced by usage. That evidence of usage is received for the purpose of ascertaining the sense and understanding of parties by their contracts, which are made with reference to such usage or custom, and that the custom then becomes a part of the contract, and may be considered as the law of it. Policies in the same terms, will receive different interpretations as applied to different voyages. There is nothing in the usage relied on in this case as a justification for the detention, which would condemn it on the score of im-

policy. As the services are always rendered for a remuneration, not much can be said in behalf of the humanity of the usage. That can only be vindicated by a gratuitous service, and making those rendering the assistance their own insurers. It is admitted that the usage relied on as a justification for the detention to succor vessels in distress, is coeval with steamboat navigation on Mississippi river. It must be presumed to have been known to all those who in any way have been affected by it. Contracts of insurance must be supposed to have been made with an eye to its existence. Is not the long existence of the usage some evidence of its policy? Had it been found contrary to the public good, would not the keen and steady sense of their interests have induced commercial men to demand its abolition, or to have guarded against it by stipulations in their contracts? This has not been done. The practice still continues, and we must presume that the master, the shipper and the insurer, all find advantages in maintaining and supporting it. The boat that renders assistance to-day may in her turn want it to-morrow. A boat of comparatively little value may be destroyed to-day, which the day before had been detained in saving from destruction one worth thousands, and both may have been insured by the same underwriters. Experience must have shown that in such adventures, a reciprocity of kind offices promotes upon the whole the interests of every one concerned in them. The abuse of this usage in our inland navigation to the prejudice of underwriters, cannot be carried to the excess to which it might extend in the navigation of the ocean. The facility of obtaining witnesses to a breach of duty by the Master, would tend greatly to check all approaches to misconduct on his part.

I am free to confess that the change in the form of the Policy of insurance which was made by the insurance companies in St. Louis after the decision in the case of Settle & Bacon vs. The Perpetual Insurance Company, has had its influence on my mind in the determination of this cause. If the law was declared in that case as it had previously been understood, why make the change? That change shows that the defence set up by the company in the above mentioned case was unjust. That the understanding of the parties was that a detention to save vessels in distress was justifiable. I had my doubts how far the usage set up should operate in the construction of the contract; but now that the solemn admission is made of record that the usage was in fact, and not merely in the eye of the law, in the contemplation of the parties at the time of entering into the contract, and as there is nothing in that usage contrary to the policy of the law, I can see no ground for withholding

2

from it its full effect. The peculiar phraseology adopted in making the alteration in the contract of insurance, cannot disguise its real object. I am glad it is yet in the power of the court to correct the irregularity of the former decision. Pride of consistency shall never induce me to persist in error.

A point was made by the appellant that as the declaration avers that the loss of the Rolla was *occasioned by a detention to succor* the George Collier, the plaintiff was bound to prove it; and as there was no evidence that the loss was occasioned by such means, he has no right of recovery. An examination of the declaration does not satisfy me that it is averred that the loss was caused by succoring the George Collier. If a loss succeeds a deviation, it is not necessary to show that the loss was occasioned by it. All that is required in order to discharge the underwriters, or to subject the Master to damages, *is* evidence that *the loss was* posterior to the deviation. But even if there had been such an allegation, this case is different from those of Breston vs. Wright. Doug. and the steamboat Little Red vs. Ward et. al., 7 Mo. Rep. In the former of these cases it was held, that when it was necessary merely to state a contract without setting forth its terms, yet if they were unnecessarily stated, they must be proved as laid. In the latter the principle was maintained, that when some of the terms of a contract were stated, and others omitted, those omitted could not be shown in evidence in order to create a variance. But this *is* not a question arising on the proof of a contract; it grows out of a declaration in *tort,* and the general rule of pleading in such cases is, that it is sufficient if part only of the allegation stated in the declaration be proved, provided, that what is proved affords a ground for maintaining the action supposing it to have been correctly stated as proved. The only exception to this rule is when the allegation contains matter of description. If the variance be in respect of a matter not essential to maintain the action, it is of no importance. 1 Phil. Evi. 205. In an indictment for murder, if the death is alleged to have been caused by a blow with a sword, it is not necessary to show that it was actually done with a sword, but if it proves to have arisen from a staff, an axe or a hatchet, this difference is immaterial. So in an action against a sheriff where the plaintiff declared that he had J. S. and his wife in execution, and the defendant suffered them to escape, and a special verdict was found that the husband alone was taken in execution, (the execution being for a debt due from the wife before coverture,) and that he escaped, the court held that the substance *of the* issue was found, and gave judgment for the plaintiff. Roberts and wife vs.

Herbert, 1 Sid. 5. So in Broomfield vs. Jones, 10 Eng. Com. Law Rep. 362, in an action of escape, the declaration alleged that the debtor was committed under a judgment on a *scire facias*, and on the trial it turned out, that the commitment was under the original judgment; it was held that the allegation of the judgment in *scire facias* was immaterial, and that it need not be proved. In the case under consideration enough was proved to maintain the action, a deviation and a subsequent loss; whether the loss was caused by the deviation or not was wholly immaterial.

Judge NAPTON concurring, the judgment will be reversed.