THE IROQUOIS.

(Circuit Court of Appeals, Ninth Circuit. October 6, 1902.)

No. 815.

1. SEAMAN—INJURY IN SERVICE—DUTY OF SHIP TO MAKE NEAREST PORT.
Where a seaman in the performance of his duty, and without fault or negligence on his part, fell and broke both bones in one of his legs below the knee, and there was no one on board competent to treat the injury, it was the positive duty of the master to take him at once to some port where proper treatment could be had, where such a port could have been reached in time, and his failure to do so, by reason of which amputation became necessary, was negligence which rendered the ship liable in damages for the injury. The master must be presumed to have known that the injury was a serious one, requiring scientific treatment, and his failure to perform his duty is not excused by his ignorance, or his belief that the leg was healing properly, nor by the fact that the seaman made no demand to be taken to a port of distress.

2. SAME—DEFENSES—INVALIDATING INSURANCE.
There is no rule of admiralty law that the departure of a ship from her course, when required to procure necessary treatment for a sick or injured seaman, invalidates her insurance on the voyage or that on her cargo.

Appeal from the District Court of the United States for the Northern District of California.

For opinion below, see 113 Fed. 964.

The appellee was an able-bodied seaman, and one of the crew of the American ship Iroquois, laden with general merchandise, on a voyage from New York to San Francisco. On February 23, 1900, while assisting in furling the main sail during a gale, he accidentally, and without fault of his own or fault of the ship, fell from the main yard to the deck, and sustained a fracture of two ribs and of both bones of his right leg below the knee. The vessel was then a few miles to the southward of Cape Horn, in latitude 56 deg. 50 min. south, longitude 67 deg. 36 min. west. The appellee was

¶ 2. See Insurance, vol. 28, Cent. Dig. §§ 736, 737.

carried to the carpenter's room, where the master set his leg in splints. He was then removed to the forecastle, where he remained during the remainder of the voyage. The broken ribs healed, but the bones of the leg failed to unite. The vessel arrived at San Francisco on May 7, 1900. On the following day the appellee went to the sailor's home, and a week later went to the marine hospital at San Francisco. There the surgeons endeavored to cause a union of the fractured bones of his leg, but the ends of the bones were dead and would not unite. In order to save the appellee's life it became necessary to amputate the leg, and it was amputated about three inches below the knee. The master of the Iroquois had no skill or experience in treating fractures. All the knowledge of the subject he possessed was derived from his own experience at some time previous when he had received treatment from a surgeon for a fractured leg. It appears that he set the appellee's leg as well as he could, and bound it and placed it upon a cushion in order to elevate it above the body, and instructed the steward to give the appellee gruel, mush, and other light food. The evidence shows that the appellee made no complaint of the treatment he received, and that the master supposed that the leg was healing, and had no knowledge to the contrary until March 30th, when for the first time the splints were removed. He testified that at that time the leg seemed to be knitting, but the appellee testified that when the splints were removed he was conscious that there was no union. One of the surgeons of the hospital testified that there never had been a union. The evidence indicated that under proper treatment the bones should have been well knitted by that time, and that their failure to unite was due to want of proper surgical treatment. That there was lack of such treatment, both in permitting the appellee to remain so long on board a ship in motion and in daily moving him, as it appears was done, is clearly deducible from the evidence. The district court found and held that, under the circumstances of the case as disclosed by the evidence, it was the absolute duty of the master of the ship to deviate from the course of the voyage for the purpose of procuring surgical aid for the appellee, and that the master was guilty of negligence in failing so to do. These findings are assigned as error.

Milton Andros, for appellants.

Walter G. Holmes (Daniel T. Sullivan, of counsel), for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

We entertain no doubt, in view of the evidence in the case and the law applicable thereto, that it was the duty of the master to bear away to some port of distress as soon as possible after the occurrence of the accident. There were several ports to which the appellee might have been taken for surgical treatment. The vessel could have returned to Port Stanley, the chief port of the East Falkland Island. The district court found that to have returned there would have involved a loss of time of three or four weeks, and in so finding made, we think, more than liberal allowance for probable delay and adverse winds. There were other ports accessible after rounding the Horn to which the appellee could have been taken in time to procure the necessary treatment and save his leg. The ship could have made Evangelistas Island by sailing one or two days out of her course. From that island it seems that the appellee could have been taken by steamer to Valparaiso. The Iroquois herself could have made the port of Valparaiso with a loss of probably not more than four or five days in her voyage. The port of Ancud or San Carlos

might have been reached with about the same loss of time. It is shown that at that port proper surgical treatment could have been had. When, on March 30th, the splints were removed, the vessel was as near to San Francisco as to Valparaiso, and there was no re-course except to proceed on her voyage. It is no excuse that the master was ignorant, or that he believed the broken leg was healing properly, and for that reason thought it unnecessary to bear away from his course. Nor is he excused by the fact that the appellee at the time made no complaint of the treatment he received, and made no demand to be taken to a port of distress. The appellee may have been ignorant of his rights and of the duty of the master in the prem-ises, or he may have been uninformed of the proximity of accessible ports. The duty of the master to the appellee was a positive one. In Robertson v. Baldwin, 165 U. S. 287, 17 Sup. Ct. 326, 41 L. Ed. 715, Mr. Justice Brown, referring to the protection accorded to seamen, observed that they are treated "as needing the protection of the law in the same sense which minors and wards are entitled to the pro-tection of their parents and guardians." The appellee had been dis-abled while in the service of the ship, and without any fault on his own part. By the maritime law he was entitled to be healed at the expense of the ship. Reed v. Canfield, 1 Sumn. 195, Fed. Cas. No. 11,641; Harden v. Gordon, 2 Mason, 54, Fed. Cas. No. 6,047. This obligation was imposed upon the ship in consideration of the appel-lee's services, and his undertaking to engage in possibly perilous voy-ages, and encounter hazards, if necessary, in the protection of the ship and cargo. The injury to the appellee was a serious one, and the master must be presumed to have known that it required careful and scientific treatment.

The argument is made that a deviation from the vessel's course would have invalidated the insurance on vessel and cargo. "A devia-tion is a voluntary departure from the course insured, without neces-sity or reasonable cause." Bond v. The Cora, 2 Wash. C. C. 80, Fed. Cas. No. 1,621. We are not aware that any court has ever held that a proper departure from the insured course for necessary treatment of a sick or wounded seaman operates to release an under-writer. The reverse has been held in Burgess v. Insurance Co., 126 Mass. 70, 30 Am. Rep. 654; Bond v. The Cora, supra; and Perkins v. Banking Co., 10 Gray, 312, 71 Am. Dec. 654.

We find no error in the conclusions of the district court. The de-cree will be affirmed.