THE IROQUOIS.

(District Court, N. D. California. February 17, 1902.)

No. 12,364.

1. SEAMEN—INJURY IN SERVICE—DUTY OF SHIP TO MAKE NEAREST PORT.

Loss of time and risk to cargo are matters which cannot properly be permitted to outweigh the duty of a vessel to procure surgical aid for a seaman injured in the service of the vessel without his fault or negligence, when such assistance is reasonably necessary, and cannot be otherwise obtained than by putting into port. The obligation of the ship is discharged only when the master has used reasonable care to provide for the comfort and care of the seaman. Whether he is required to deviate from his course to touch at some port will depend upon the circumstances of the particular case, such as the nature of the injury, the means for treating it on board, and the probability of being able to reach a port in time for his relief. If a person of ordinary judgment would know that the injury was such as to seriously endanger the seaman's life or limb, and that he should have medical or surgical

aid at the earliest possible moment, it is the imperative duty of the master to take the necessary steps to procure such aid, if within his power.

**2. SAME.**

Libelant, who was a seaman 20 years old, fell to the deck during a gale without negligence on his part, and sustained a simple fracture of the bones of one leg below the knee. There was no surgeon on board, but the master, with the assistance of others, undertook to set the bones, bound the leg in splints, and proceeded on his voyage to San Francisco, where the ship arrived in about 10 weeks, and where libelant was paid off, and went to a hospital. The bones had failed to unite, owing to improper and unskillful treatment, and, because of the lapse of so long a time, could not be made to do so, and it became necessary to amputate the leg. At the time of the injury the ship was southwest of Cape Horn, and 450 miles from a port in the Falkland Islands, where surgical aid could have been obtained, and which the ship could have reached in two or three days, although it would have required four or five weeks, owing to head winds, to put back to such port, and again recover the distance lost. *Held*, that the injury was such that the master must be presumed to have known that the services of a competent surgeon were required to make a recovery reasonably certain, and his duty required him to make an attempt to procure them by putting into port, regardless of the loss of time and expense incident to such deviation.

**3. SAME.**

The fact that libelant made no objection to the action taken by the master, and did not request to be taken to the nearest port, where he was not consulted, did not prejudice his rights, nor relieve the ship from liability for the failure to perform the duty which his condition demanded.

**4. DAMAGES—LOSS OF LEG—AMOUNT OF AWARD.**

A seaman 20 years old, strong and in good health, who lost his leg from an injury received in the service of the ship through the failure of the master to put into port where he could obtain surgical attendance, *held* entitled to damages in the sum of $3,000.

In Admiralty. Libel in rem for damages.

Walter G. Holmes and D. T. Sullivan, for libelant.

Milton Andros, for claimants.

DE HAVEN, District Judge. The libelant was a seaman on the ship Iroquois, on a voyage from New York to San Francisco; and on February 23, 1900, when in latitude 56° 50′ south, and longitude 67° 36′ west, a little south and west of Cape Horn, the libelant, while engaged in furling the mainsail during a gale, accidentally, and without any fault on his part or that of the ship, fell from the mainyard to the deck, in consequence of which he sustained a simple fracture of the bones of the right leg below the knee, and two of his ribs were also broken. The fractured bones and ribs were set by the master of the ship, assisted by the steward and the ship's carpenter. The libelant entirely recovered from the injury to his ribs, but the bones of the leg failed to unite. Neither the master nor any other person on board of the vessel had sufficient knowledge and skill to properly set the leg, or to thereafter give it necessary surgical attention. At the time of the accident the ship was about 480 miles from Port Stanley, the chief port of East Falkland Island, where surgical aid might have been obtained. The wind was fair for that port, and it could have been made in two or three days; but the testimony of the master of the

Iroquois, which I think should be accepted upon that point, was to the effect that it would probably have taken from three to four weeks to have gone to Port Stanley and return to the place of the accident, because in returning the .vessel would have had to beat against a head wind. The. ship arrived at San Francisco on May 7, 1900, where the voyage ended, and the following day the libelant was paid off, and his connection with the ship terminated. On May 14th he entered the Marine Hospital at San Francisco, where, on the 16th of October following, his leg was amputated below the knee. The broken bones having failed to unite, their ends had become dead, and amputation of the leg was necessary in order to save the life of libelant. The libelant was treated with kindness by the master at all times after the accident, and had all the care that it was possible for one in his situation to receive on board of a vessel at sea, when unattended by any one possessing surgical knowledge and skill. The libelant at no time made any complaint of the condition of his leg, and made no request to be taken to Port Stanley, or to any other port; and he was not asked by the master whether he would like to be taken to some port for treatment, or whether he would be satisfied with such care as could be given upon the ship. Libelant at the time of the accident was 20 years old, and in good health. It appears from the evidence of the physicians who testified that a fracture similar to that sustained by libelant will unite, if properly treated by a surgeon, within three or four weeks after the injury is received, and that broken bones of a person of the age of libelant, other conditions being the same, will unite more readily than those of a person of mature years. The splints put around the leg at the time of the accident were allowed to remain in place without removal of the bandages for five weeks. The medical testimony is to the effect that the splints should have been removed and replaced four or five days after being first put on, and every few days thereafter, and the leg examined at such times for the purpose of determining whether the bones were properly in place and uniting. There is no reason to doubt that if libelant had received proper surgical treatment within a few days after his leg was broken the bones would have united, and there would have been no necessity for its amputation. This action is brought to recover damages against the vessel, the libel alleging that her master was negligent in not immediately after the accident proceeding to Port Stanley, or bearing away to Valparaiso, or some other port on the western coast of South America, where surgical aid could have been obtained, before it was too late to effect a union of the fractured bones, and the question thus presented is to be determined upon the facts above stated.

1. It has been often decided, and may be regarded as a settled principle of admiralty law, entering into and forming a part of the seaman's contract, that it is the duty of the vessel "to provide, for a seaman who becomes sick or wounded or maimed in the discharge of his duty, whether at home or abroad, at sea or on land,—if it be. not by his own fault,—suitable care, medicines, and medical treatment, including nursing, diet, and lodging." 2 Pars. Shipp. & Adm. p. 81; Brown v. Overton, 1 Spr. 462, Fed. Cas. No. 2,024; The

Atlantic, Abb. Adm. 451, Fed. Cas. No. 620; Whitney v. Olsen, 47 C. C. A. 331, 108 Fed. 292; Scarff v. Metcalf, 107 N. Y. 211, 13 N. E. 796, 1 Am. St. Rep. 807.

The contention of the claimant is that the master of the Iroquois was not, under the rule just stated, bound to prolong the voyage three or four weeks by returning to Port Stanley for surgical aid. This contention seems to be supported by the case of Peterson v. The Chandos (D. C.) 4 Fed. 645. That was an action brought by a seaman whose leg had been broken in the service of the Chandos; the libel alleging that the leg was shortened three inches because it was not properly treated upon the vessel, and that the master was guilty of negligence in not going into Valparaiso, the nearest port, where proper surgical aid and appliances could have been obtained. The court held that the master was not negligent in this respect, saying:

"The burden of proof is upon the libelant to support his allegation that the master failed to do his duty towards him in this respect. If it had been shown that the vessel could, under the circumstances, make about ten miles an hour, and thereby have made Valparaiso in a little more than five or six days, it might have been proper for the master to have gone in there; indeed, I think it would have been his duty to do so. But, as it is, I do not think it would be safe to assume that this port could have been made in less than two weeks, and I do not think that the vessel was under obligation to make that sacrifice of time and risk of cargo for the libelant."

I am unable to concur in all of the views thus expressed by the able judge who pronounced the opinion in that case. I cannot agree to the proposition that sacrifice of time and risk to cargo are matters which can properly be permitted to outweigh the duty of procuring surgical aid for a seaman disabled in the service of a vessel, when such assistance is necessary, and cannot be obtained otherwise than by putting into port. The obligation of the ship is discharged only when the master has used reasonable care in providing for the comfort and cure of the seaman. Whether he is required to deviate from his course, and touch at some port at which the seaman can receive better attention than can be given him upon the vessel, will depend upon the circumstances of the particular case, such, for instance, as the nature of the seaman's sickness or injury, and the probability of being able to reach a port in time for his relief; but it would seem clear that if one of the crew were so ill or severely injured that any one of ordinary judgment, seeing him, would know that his life or limb was in serious danger, and that he ought to have medical or surgical aid at the earliest possible moment, then it would be the imperative duty of the master to take the necessary steps to procure such aid, if within his power. Of course, if the vessel were so far at sea as to make it uncertain whether she could reach the nearest port in time to benefit the sufferer, or if the master had no reason to believe that the sickness or injury was serious, he would not be chargeable with negligence for proceeding on his course, giving to the seaman such care as his knowledge and the conveniences on board the vessel would permit. When there is no physician to consult, the master must necessarily determine, as best he may, whether the injury or sickness is such as to endanger life or limb, and he cannot be charged with negligence simply because he erred in judgment as to the necessity for

putting into port, when the nature of the disease or the extent of the injury was obscure, and its serious character would not have been apparent except to a physician or surgeon; but the duty of the master to exercise a reasonable judgment as to what is necessary to be done for a seaman disabled by sickness or accident, while in the service of the ship is an absolute one. Now, in the case of an injury like that received by the libelant, the master is presumed to know, because the fact is one of common knowledge, that to make a recovery reasonably certain the leg must be set with care, and receive the attention which only a person having some knowledge of surgery can give. In such a case, therefore, when there is no one on board possessing such knowledge, ordinary prudence would suggest that the services of a surgeon should, if possible, be obtained before the time has passed for a perfect union of the broken bones; and it is the duty of the master, without regard to the loss of time, or the expense incident to the deviation, to make an effort to procure such assistance by putting into some port where it can be obtained.; and not to do this, if it is probable that a port can be made in time, is a failure to discharge the duty which the vessel owes to a seaman sick or disabled in its service. Certainly, to properly treat such an injury is beyond the ordinary skill of the master, and ought not to be undertaken by him without the consent of the seaman.

Upon the question involved here, the case of Whitney v. Olsen, 47 C. C. A. 331, 108 Fed. 292, is in point. That was an action to recover damages for. the alleged negligence of the master of the schooner Uranus, in not taking the libelant to the nearest port for surgical treatment of an injury received by him at sea. It was shown in that case that the accident occurred when the vessel was about 500 miles from Port Townsend, the nearest port, and the injured seaman requested to be taken there. The master refused, and proceeded on his voyage. In consequence of not receiving surgical·treatment in time, the bones of the leg failed to make a proper union, resulting in permanent injury to the leg. Upon this state of facts, it was held that the master was guilty of negligence in not taking the libelant to Port Townsend after the accident, the court saying:

"There might have been additional expense incurred, but this presents no excuse,—'not the least extenuation.' If the master had performed this duty, and taken the injured seaman to Port Townsend for treatment, the vessel and its owners would simply 'have been subjected to a burden· which the law imposes.' No member of the crew could complain or hold the ship responsible in damages for loss of time necessarily incurred in the discharge of its duty. Necessity and humanity, as well as the principles of the admiralty law, would have amply protected the owners of the ship from such loss."

The fact that in that case the injured seaman requested to·be taken to the nearest port, while in the present no such request was made, is not sufficient to make the principle upon which that case was decided inapplicable to this. The decision in that case proceeded upon the principle that the seaman, not having consented to what was done by the master of the Uranus, was entitled to maintain the action. So here the libelant did not consent to the action of the master of the Iroquois. It is not claimed that he did so expressly, and I do not

think there is anything in the evidence from which such consent can be fairly implied. He was not consulted as to his wishes in the matter, and, such being the case, he did not waive his right to be carried to the nearest port for treatment by failing to request that this should be done. The duty devolved upon the master, without such request, to make every reasonable effort to provide the libelant with surgical aid, by taking him where it could be obtained; and the failure to discharge this duty, unless performance was waived by libelant, constitutes negligence for which the ship must respond in damages. The libelant was a minor, and, it may be, ignorant of his rights in the premises, but, whether so or not, the master was in supreme authority, and the libelant entirely dependent upon him for necessary care. The master knew of the risk which libelant would incur by reason of the constant motion of the vessel, and he also knew, or ought to have known, that he was not possessed of sufficient skill to properly treat the leg under conditions which might arise, and which often result from injuries of that character. In a matter of so much importance to him the libelant should have been consulted, and the master ought not to have assumed the responsibility of proceeding upon the voyage, and himself treating the broken leg, without libelant's consent.

2. Upon the question of damages: The libelant cannot follow the occupation of a seaman, but is not disabled from engaging in business or doing such light work as one in his crippled condition is competent to perform. His ability to earn wages, however, is not as great now as before the loss of his leg. Taking this fact into consideration, as well as the pain and suffering he has endured, and the further fact that the injury will be permanent, the libelant is, in my opinion, entitled to recover the sum of $3,000 and costs, with interest from date of decree until same is satisfied.