## THE TROOP.

### (District Court, D. Washington, W. D. November 5, 1902.)

1. SEAMEN—INJURY IN SERVICE—LIABILITY OF SHIP FOR FAILURE TO GIVE PROPER CARE.

Neither the decisions of the British admiralty courts, nor the English merchants shipping act, deny to a seaman the right given him by the general maritime law to maintain a suit in rem against the ship to recover damages caused by the failure of the master to furnish him with proper care, treatment, and supplies after his accidental injury in the service of the ship.

2. SAME—FOREIGN SHIP—JURISDICTION TO ENFORCE LIABILITY.

An American court of admiralty will entertain jurisdiction of a suit by a seaman against a foreign ship to recover damages for the gross negligence or misconduct of the master in failing to give the libelant proper care, nursing, and medical attention after his accidental injury in the service of the ship, by reason of which he endured great suffering and was permanently disabled, where the circumstances are such that he would otherwise be without any effective remedy.

3. SAME—NEGLECT BY MASTER—DAMAGES.

When a British ship was leaving a port where there was a hospital, having made but six miles from her anchorage, libelant, who was a seaman, fell to the deck, and was severely injured; fracturing the bones of his thigh and arm. Instead of sending libelant to the hospital, the captain undertook to reduce the fractures, and then sent libelant to his bunk in the forecastle, and continued the voyage, giving him no further attention until reaching another port, 36 days later. The bunk in which libelant was placed was unsuitable for one in his condition, and he was given very little attention, and neither proper care nor nursing, in consequence of which he suffered intensely. As a result of the captain's malpractice, he was compelled to undergo severe surgical treatment after reaching a hospital, and was permanently disabled. Held, that the captain was guilty of gross inhumanity, and violation of the duty imposed on him by libelant's contract for service, which rendered the ship liable in damages for libelant's suffering and permanent injury, assessed by the court at $4,000.

In Admiralty. Suit in rem for damages.

A. W. Buddress, for libelant.

J. M. Ashton and W. L. Sachse, for claimant.

HANFORD, District Judge. This is a suit in rem against the British ship Troop by Albert Louie, a German sailor, to recover compensation for excessive and unnecessary suffering after a personal injury and permanent disablement caused by falling from the main upper topsail yardarm of the ship while he was performing his duties as a member of the crew of said ship. The injuries were very severe, the bones of his left arm and right thigh being fractured, and he was otherwise cut and bruised. The accident happened when the vessel was departing from the port of Fusan, bound for Puget Sound, having made only six miles, or a little more, from her anchorage in the inner harbor of Fusan, and it was calm, so that she was making no headway; but the captain, instead of sending the libelant to the hospital at Fusan, undertook the treatment of the case himself; that is to say, he applied splints and bandaged the fractured members, and then sent the libelant to his bunk in the forecastle, and did not see him again, or do anything for him, until the vessel arrived at Port Angeles, 36 days

118 F.—49

after the injury. The nearest he came to even a pretense of giving the libelant any personal attention during the voyage was to look into the forecastle once, when the libelant was asleep. The captain not only failed to give personal attention to the wants of the libelant, but neglected to detail another member of the crew to attend to him. He ordered the steward to look after him, but without relieving the steward from the performance of his other duties, which required all of his time. The evidence shows that during the greater part of the voyage the steward did not see the libelant oftener than once in two days. To properly reduce the fracture of a leg, it is necessary for the patient to have sufficient room to be stretched out at full length, but, according to the undisputed evidence in this case, although there was an unoccupied room in the after part of the ship, the libelant was obliged to remain, from the time of the injury until he was taken into the United States marine hospital at Port Townsend, in a bunk which was narrow and too short for him; and during many days, when the ship was rolling in heavy weather, he was obliged to use his unbroken arm, clinging to the bunk, to save himself from being thrown out. In that situation his agony was intense, and when he applied to the steward for help he was told by that functionary that he did not have time to attend to him. The vessel arrived at Port Angeles on the 21st day of February, 1902, and passed quarantine inspection the same day. She was then about 20 miles from the United States marine hospital, and there was nothing to hinder the prompt removal of the libelant to that institution, and in the argument in behalf of the claimant it is contended that the captain made every possible effort to have the libelant placed in the hospital as soon as it could be done. Yet it is a fact that he was still detained an additional five days in his horrible bunk, where he had been from the time of the injury without being washed, and without any change of clothing. It is useless to parade more of the sickening details of this case. It is a shocking instance of "man's inhumanity to man," and the excuses which are made in behalf of the captain are transparently false and puerile. For instance, the claim is made that it was impossible for the ship to return to Fusan after the accident happened, because it was calm at that particular time, and when the wind sprang up, a few hours later it was dark; that the man could not be sent ashore in a small boat, because the subordinate officers were intoxicated; and that the ship could not run into Nagasaki or Kobe, because the captain had never visited those ports, and was ignorant of the conditions there. The captain refers to the calm and the darkness, and the intoxication of his subordinates as if those conditions were unchangeable and perpetual and as if the loss to the owners of the ship occasioned by a few hours of delay created an insurmountable barrier, making return to Fusan or calling at another near-by port absolutely impossible.

I give to the claimant all the advantage to his side of the case to be derived from consideration of British law, and I hold that no liability, except for expenses and wages, attaches to the ship or owners for a personal injury to a seaman happening while he is in the service of a British ship, in consequence of the negligence of the captain; but that rule is not applicable to a case like this, where complaint is

made of suffering long continued in consequence of failure to observe the dictates of humanity for the relief of a sufferer, after an accidental injury. By the sixth article of the laws of Oleron, it is provided that:

"If, by the master's orders and commands, any of the ship's company be in the service of the ship, and thereby happen to be wounded or otherwise hurt, in that case they shall be cured and provided for at the costs and charges of the said ship." 30 Fed. Cas. p. 1174.

See, also, the Black Book of the Admiralty, published in 1871, by authority of the lords commissioners of her majesty's treasury, under direction of the master of the rolls (volume 1, p. 95).

The laws of Oleron were introduced into England by King Richard, the crusader, and are to a large extent the basis of the maritime law of that country, as well as of the United States, and the principle of this particular article is observed by maritime courts in all countries. It is contended in this case that the English merchants' shipping act has superseded the general maritime law on this subject, by providing that the expenses incidental to the cure of sick and disabled seamen shall be paid by the owners of the vessel, and that this provision exempts the ship from liability. It appears, however, by the provisions of that act itself, that there was no intention to deprive seamen of a remedy by proceedings against the ship, for it is expressly provided that if a seaman or apprentice becoming ill has, through the neglect of the master or owner of the ship, not been provided with proper provisions and water, and with such medicines and medical stores as are required by said act, then the owner or master shall be liable to pay all expenses, not exceeding three months' wages, properly and necessarily incurred either by the seaman himself or by the crown, "but this provision shall not affect any further liability of the master or the owner for the neglect, or any other remedies possessed by the seaman or apprentice."

In Maclachlan, Merch. Shipp. (4th Ed.) pp. 264, 265, the author, referring to a proviso to the section of the act with respect to the providing of medicines and antiscorbutics, and the supply thereof on proper occasions to the crew, which proviso is very similar to that above quoted, makes the following statement of what the law is held to be in England:

"By the neglect of such duty, the owner or master incurs a penalty, besides liability for expenses occasioned thereby, and also for damages recovered, by any one of the crew who suffers injury in consequence;" citing as authority Couch v. Steel, 3 El. & Bl. 402, 23 Law J. Q. B. 121.

Each of the opinions in the case of Atkinson v. Waterworks Co., 2 Exch. Div. 441, contains dicta questioning the soundness of the decision in Couch v. Steel; and it was held in that case that a man whose house was burned did not have a cause of action against a water company for its failure to maintain a sufficient supply of water for use, free of charge, in extinguishing fires, and that a statutory penalty was the only liability incurred by the company. That decision, however, does not militate against the proposition that a statute prescribing a penalty for failure to discharge an obligation created by contract and enjoined by the general law, and containing a saving

clause, does not by implication take away the remedy of a man who has been wronged by a breach of the contract obligation to him.

In the very able argument in behalf of the claimant, no decision by an English court was cited denying the right of an injured seaman to recover damages for deprivation of care and attention by suit in rem in admiralty. Wilson v. Merry, L. R. 1 H. L. Sc. 326, Hedley v. Pinkney, 7 Asp. 483, and Johnson v. Lindsay, 65 Law T. (N. S.) 97, do not seem to touch the question in this case; and, as it has not been made to appear by citation of English decisions that the courts having jurisdiction of admiralty causes in that country hold to a different rule, this court must apply the principles of the general maritime law.

The relief which sick or wounded seamen are entitled to when they become ill or have suffered injuries without being themselves grossly in fault includes food, lodging, medicines, skillful treatment by physicians and surgeons when obtainable, and nursing; and, when these are not supplied by reason of the cruelty or incompetency of a captain or owners in charge of the vessel, the ship herself is, in the eyes of the maritime law, a guilty thing. And upon that theory the courts enforce the liability by appropriate proceedings in rem against the ship. In a decision by Judge Betts in the case of The Atlantic, Fed. Cas. No. 620, Abb. Adm. 451, the rule is stated as follows:

"So, also, in case due attention to his necessities has been unjustly omitted by the ship abroad, or his case has been improperly treated, the courts may properly enforce against the ship this great duty towards disabled mariners, even after her contracts are terminated, upon the ground of a failure to perform towards them the obligation in the shipping contract."

See, also, The City of Alexandria (D. C.) 17 Fed. 395; Whitney v. Olsen, 47 C. C. A. 331, 108 Fed. 292; The Iroquois (D. C.) 113 Fed. 964.

The jurisdiction of this court is disputed on the ground that the Troop is a British ship. I consider, however, that it is the imperative duty of this court to take cognizance of the case. It is the mission of ships to wander from their home ports, and they may be employed for many years sailing from port to port in different parts of the world, without visiting the countries in which their owners reside, and for this reason,—to protect distressed seamen,—courts of admiralty are obliged to serve, to a certain extent, as courts of the world. They leave controversies between the owners or masters and crews of foreign ships to be settled by the courts of the country to which each vessel belongs, when they arise upon a return voyage to that country, and in all cases when practicable to do so without denying to a party who has been wronged the only opportunity which he may have to obtain redress. The New City (D. C.) 47 Fed. 328; Bolden v. Jensen (D. C.) 70 Fed. 505; The Belgenland, 114 U. S. 355, 5 Sup. Ct. 860, 29 L. Ed. 152; Panama R. Co. v. Napier Shipping Co., 166 U. S. 285, 17 Sup. Ct. 572, 41 L. Ed. 1004. In the case under consideration it would be an inexcusable denial of justice to disclaim jurisdiction, and leave this libelant, who is a German, to go to England to seek in the courts of that country enforcement of his rights. The Troop may not visit any port of England for many years, and, even were the libelant to meet her in an English port, he would be unable to estab-

lish his rights, because all the witnesses upon whom he must depend to prove the facts would be absent. The British vice consuls residing at Port Townsend and at Tacoma have both disclaimed authority to adjudicate the libelant's claim for damages. Therefore this court must take cognizance of his case, or he will be remediless, and the ship will be permitted to escape liability for a monstrous wrong, inflicted in disregard of the just principles of maritime law.

By reason of the captain's malpractice upon the libelant, he was obliged to undergo very painful surgical treatment after his arrival at Port Townsend, and his disability to work and follow his calling as a mariner has been made permanent, whereas, if he had been sent ashore and placed in a hospital at Fusan or Nagasaki, it is probable that his injuries might not have made him a cripple for life. Considering all the circumstances of aggravation, I consider the sum of $4,000 to be a reasonable amount to award as damages.

A decree will be entered in favor of the libelant for $4,000, with interest thereon at the rate of 6 per cent. per annum from the date of filing the libel, and costs.