## THE M. E. LUCKENBACH.

(District Court, E. D. Virginia. November 3, 1909.)

1. SEAMEN (§ 11*)—MEDICAL TREATMENT—DUTY OF MASTER.

It is the duty of the master of a vessel to look out for the care and 'health of his crew, and when a seaman is ill, with no physician on board, to procure for him intelligent medical treatment as soon as possible, and, if necessary, send him to a hospital, whether he requests it or not.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. § 39; Dec. Dig. § 11.*

Rights and liabilities of seamen as to medical treatment, see note to The Cuzco, 83 C. C. A. 186.]

2. SEAMEN (§ 11*)—MEDICAL TREATMENT—LIABILITY OF VESSEL FOR FAILURE TO FURNISH.

Libelant shipped as fireman on a tug, on a voyage from Newport News to Colon, Panama. Seven days out from Colon, libelant became ill, and on reaching Colon a man was employed in his place; but no medical attendance was procured for him, and after remaining in Colon and Port Antonio for four days the tug proceeded to New York, where libelant's substitute passed the quarantine officer in his stead, and three days later libelant was discharged and sent to a hospital, where he remained for nearly two months, ill with typhoid fever. While on board his quarters were not changed, and he was given very little care. *Held,* that the master was derelict in his duty, and the vessel was liable to libelant for the suffering and damage resulting from his neglect.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. § 40; Dec. Dig. § 11.*]

3. DAMAGES (§ 130*)—PERSONAL INJURIES—FAILURE OF VESSEL TO FURNISH MEDICAL TREATMENT TO SEAMEN.

Where a seaman, who became ill with a fever on a voyage, was not given medical attention or sent to a hospital for some three weeks, although both could have been done, and after that lay in a hospital for nearly two months, and at the time of trial, eight months afterward, had

not recovered his health, nor been able to work, an award of $1,200 damages was given against the vessel.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 357–367, 370, 371; Dec. Dig. § 130.*]

4. EVIDENCE (§ 75*)—PRESUMPTIONS—FAILURE TO CALL WITNESSES.

Where it was within the power of a party to produce evidence on controverted issues, the failure to produce it warrants a presumption against such party on those issues.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 95–100; Dec. Dig. § 75.*]

In admiralty. Suit by Axel Falkenstrom against the steam tug M. E. Luckenbach. Decree for libelant.

James F. Duncan and N. T. Green, for libelant.
Peter S. Carter and Harry S. McCoy, for respondent.

WADDILL, District Judge. The libelant seeks to recover damages against the respondent, the steam tug M. E. Luckenbach, for the failure of her master to provide proper medical treatment and attendance for him while in the service of the tug as a fireman; he having fallen sick during the voyage from Newport News, Va., to Colon, Panama. In many respects the facts are undisputed, namely, that the libelant was employed as a fireman on the tug; that on the voyage from Newport News to Colon, which lasted some twelve days, he was taken with fever some seven days out from Colon; that the boat stopped at Colon two days, and then proceeded to Port Antonio, consuming one day en route, and remained there one day; then proceeded from Port Antonio to New York, consuming seven days; and, after remaining in New York some three days, the libelant was on the 8th day of September, 1908, sent to the Norwegian Hospital, where he remained ill with fever until the 30th of October following.

Libelant insists that he was not given proper treatment nor furnished suitable food and medicine during the entire voyage; that at Colon, though sick, he was required to stand in line for inspection by the quarantine officials and health officer at the port; that at that port a man was employed to take his place, who did thenceforth discharge his duties, and he was confined practically to his bunk in the forecastle, though he would sometimes come out on deck; that the examination by the quarantine officials at Port Antonio was very perfunctory, the officers not coming on board, and at New York his condition was such that he was not able to appear in line for inspection; that he was hid in his room, and that the man who had taken his place was passed off in his stead. Libelant further insists that a doctor should have been called to see him at Colon, and that he should, if necessary, have been sent to hospital there; that he asked to be so sent, but the captain informed him that it was an undesirable place to leave him, and that he would be taken to Newport News, to which libelant made no objection. The captain denies that libelant made any request for a doctor, or to be sent to the hospital, and says that he offered to take him to a hospital, and libelant asked not to be sent.

It is admitted that no doctor was sent for, either at Colon or at Port

Antonio, nor was libelant sent to a hospital at either place, and he was taken from Port Antonio to New York, where no doctor was called to see him, and at the end of three days, and after his discharge from the ship, he was sent to the hospital. There is some dispute as to the extent of libelant's illness, as there is, also, about the circumstances under which the man was taken on at Colon, and whether he was actually employed to take libelant's place, and appeared in line before the quarantine officials at New York for the libelant. A careful review, however, of the testimony, convinces the court that it was manifest from the first that the libelant was ill, and that he required, at the earliest practicable moment after he was taken sick, the attention of a physician, as it is, also, that his disability for work, certainly at Colon, was recognized by the master, and that the man was taken on board and employed in his place and stead, because of his illness, and thereafter performed the duties of fireman in place of the libelant, and passed the quarantine officer in New York in substitution for the libelant. Whether the libelant may have been actually secreted in his bunk or not, certain it is the fact of his illness was not called to the attention of the health officer, nor his presence on board the tug made known.

The ship's master seems to have proceeded largely, as does his counsel in the examination of witnesses and in argument, upon the theory that it was the duty of the libelant either to have gone personally to see, or to have asked for, a doctor, or requested to be sent to a hospital; and the ship's master apparently acted upon the idea, in which he may doubtless have been sincere at first, that the man was only slightly sick. But in all this he manifestly failed to recognize his obligation in the premises. It was the duty of the master to look out for the care and health of the libelant, whether he made a request of him so to do or not; and from this testimony it is clear that libelant's condition, lasting during a period of seven days before reaching Colon, was such as to require of the master, in the exercise of that degree of care, consideration, and responsibility which his position imposed upon him, to see what was the character of the fever from which libelant was suffering, and was something as to which he could not hesitate, vacillate, speculate, or take chances upon. Ships of the size of the Luckenbach having no physician on board, the crew have to look to the master for proper care and medical treatment in matters affecting their health; and, when taken ill upon a voyage, the laws of humanity require that the master, having sick members of his crew in charge, should treat them with the utmost care, kindness, and consideration consistent with the circumstances in which he is placed, and see that intelligent medical assistance is furnished as soon as possible. In cases of emergency, voyages have to be deviated from; and there would certainly seem to be no good excuse why, upon arrival at a port with a sick man on board, medical advice should not be had at once, and the seaman sent to a hospital, if necessary. In this case, confessedly, this was not done, either at Colon or Port Antonio, nor at New York until the ship had been in port three days, and then libelant was discharged, taken from the ship on a stretcher, carried to the hospital, where he

was confined for a period of nearly two months, and treated while there, as shown by the doctor's certificate discharging him, for typhoid fever, and as libelant understands, as shown by his testimony, for typhoid pneumonia.

Not only is the negligence of the master apparent in his failure to secure proper medical aid and hospital treatment at the earliest practicable moment, but it is quite apparent from the entire testimony that but little attention was shown by the master to the libelant during his entire illness on shipboard. His quarters were not changed; his meals were not looked after; indeed, save furnishing him on several occasions with some whisky and quinine, nothing whatever was apparently done looking either to his health or comfort, such as his condition required, although part of the time the vessel was in a very hot and unhealthy climate; and the failure to send for a doctor after the arrival of the vessel at the port of New York, for a period of three days, in his then condition, was inexcusable, if not inhuman. The law applicable to this case has recently been fully considered by the Supreme Court of the United States, the Circuit Court of Appeals for this circuit, and by this court, and hence mere citations of the authorities will be sufficient. The Osceola, 189 U. S. 158, 23 Sup. Ct. 483, 47 L. Ed. 760; The Iriquois, 194 U. S. 240, 24 Sup. Ct. 640, 48 L. Ed. 955; Id. (D. C.) 113 Fed. 964; Id., 118 Fed. 1003, 55 C. C. A. 497; The Svaeland (D. C.) 132 Fed. 932; Id., 136 Fed. 109, 69 C. C. A. 97.

Considering the amount of the compensation which should be allowed the libelant, the case is one of rather more than usual difficulty, in that at the threshold we are confronted with the uncertainties arising from cause and effect incident to the frailties of the human body resulting from long illness. The libelant was discharged from the hospital on the 30th day of October, 1908. He was examined as a witness in this case on the 24th day of June, 1909, and testified that he had not been able to work since leaving the hospital; that he had been sick, weak, unable to get his strength back, and also suffered from swelling of his legs. A physician was examined at the trial, who testified that he first saw libelant about the middle of November, 1908, when he found both legs very badly swollen, and the man thoroughly unable to work, and in an anæmic condition, and that he examined him on the day of the trial, and still found him weak and his limbs swollen. Libelant's appearance upon the stand also indicated his enfeebled condition.

Counsel for respondent contended that it did not follow that libelant's condition arose from the master's neglect hereinbefore recited; that libelant had been the subject of a serious attack of malarial fever some four months before entering the ship's employ; and that his ailments while on shipboard, and at the hospital, might have been malarial, and not typhoid, fever. Suffice it to say that it was easily within the power of the respondent to have cleared up all these matters, if it desired to do so. The quarantine officer at New York could readily have been called to explain the circumstances connected with allowing the ship to pass quarantine with the libelant on board in his then condition, as could the doctor at the hospital, whose certificate was furnished,

showing the existence of typhoid fever, and, indeed, the man who took libelant's place while sick at Colon could have explained whether he passed quarantine at New York as and for the libelant; none of which things were done, and the usual presumptions from such failure should arise. Kirby v. Tallmadge, 160 U. S. 379, 16 Sup. Ct. 349, 40 L. Ed. 463; The Georgetown (D. C.) 135 Fed. 854, 859; The Luckenbach (D. C.) 144 Fed. 980.

Upon the whole case, the court thinks that it is fully justified in holding that the libelant's ailment was that of typhoid fever, and that it is fairly inferable that his condition of ill health arose therefrom, and as the result of the respondent's failure to properly discharge its duty to him, while in its service as a seaman, and that an award of $1,200, would be reasonable to the libelant for the suffering that he has been subjected to and the damages he has sustained.