THE C. S. HOLMES.

(District Court, W. D. Washington, N. D.   Dec. 31, 1913.)

No. 2,539.

1. SEAMEN (§ 29*)—ACTION FOR INJURIES—LIABILITY OF VESSEL.
     The owner of a vessel which was seaworthy and properly equipped and manned was under no duty to see that needed assistance was given to a seaman in the performance of his duties by other members of the crew, and a suit in rem will not lie against the vessel for an injury to the seaman because of the master's negligence in such respect.
     [Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 186, 188–194; Dec. Dig. § 29.*]

2. SEAMEN (§ 29*)—INJURY IN SERVICE—LIABILITY OF OWNER.
     It is the duty of the owner of a vessel to furnish an injured seaman with proper medical care, and the master is his representative with respect to such duty, for whose negligence the owner is liable; but he is not liable for the negligence of a physician employed by the master provided the master exercised ordinary and reasonable care in the selection.
     [Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 186, 188–194; Dec. Dig. § 29.*]

3. SEAMEN (§ 29*)—INJURY IN SERVICE—LIABILITY OF OWNER.
     The owner of a vessel is liable for the expenses of effecting the cure of a seaman injured in his employ so far as the cure is possible by ordinary medical means, and this liability exists even where the owner has

not been negligent and may be enforced in rem, but any liability beyond that can only be based on negligence.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 186, 188–194; Dec. Dig. § 29.*]

In Admiralty. Suit by Gust Fondahn against the schooner C. S. Holmes. On exceptions to libel. Exceptions sustained.

Daniel Landon, of Seattle, Wash., for libelant.

Ballinger, Battle, Hulbert & Shorts, of Seattle, Wash., for claimant.

NETERER, District Judge. The libelant seeks damages for personal injuries sustained on board the schooner C. S. Holmes, and for negligence of the master in furnishing medical treatment thereafter. The libel alleges that in December, 1912, libelant signed articles as an able seaman for a voyage from San Francisco, Cal., to Everett, Wash., and return, and that:

"While on said voyage * * * on the 3d day of January, 1913, at about the hour of 8 o'clock in the afternoon while the said schooner was being towed near Cape Flattery, the captain of said schooner gave orders for the libelant to go forward and let go the towline or sprig; that in pursuance of said order the libelant went forward and commenced to release the wire towline or sprig reaching from said schooner to the tugboat in the presence of the captain and the rest of the crew; that in order to release the same it became necessary for the libelant to have assistance; that the captain with the rest of the crew standing near by negligently failed to insist upon giving libelant assistance; that libelant alone was unable to prevent said towline or sprig from springing, and the end of the same struck libelant with great force and violence, causing a compound fracture of the right arm and injuring his back."

Then follow the allegations of negligence in the furnishing of medical treatment, which will be discussed later.

[1] The claimant filed exceptions to the libel, the second paragraph of which reads as follows:

"That this action, instituted by a seaman in rem against a vessel to recover damages for personal injuries sustained by him aboard a seaworthy vessel at sea, is not an admiralty and maritime cause of action and is not within the jurisdiction of this honorable court."

It will be seen that the negligence alleged is that:

"The captain with the rest of the crew negligently failed to insist upon giving libelant assistance."

The issue raised by the exception is whether for such negligence the vessel is liable.

The members of the crew, "except perhaps the master," must be considered fellow servants. The Osceola, 189 U. S. 158, 23 Sup. Ct. 483, 47 L. Ed. 760. Is the master a fellow servant of the other members of the crew?

"To put it most favorably for the libelant, the question was reserved in The Osceola, 189 U. S. 158 [23 Sup. Ct. 483, 47 L. Ed. 760]." The Bunker Hill (D. C.) 198 Fed. 587.

In The Governor Ames (D. C.) 55 Fed. 327, Judge Hanford held that there could be no recovery for the negligence of the officers of a

vessel, where the owner had furnished proper equipment, and a sufficient crew, and many authorities may be cited in support of such a holding. 25 Am. & Eng. Enc. of Law; The City of Alexandria (D. C.) 17 Fed. 390; The Bunker Hill (D. C.) 198 Fed. 587.

The true rule is that stated by Judge Ross in Olson v. Oregon Coal & Navigation Co., 104 Fed. 574, 576, 44 C. C. A. 51, 53:

"It is undoubtedly true that the master represents the owner in respect to the personal duties and obligations which the latter owes to seamen, such, for instance, as the maintenance of the ship and her apparel in a safe and seaworthy condition, procuring repairs and supplies, the supplying of the crew with sufficient food and with medical attendance and care in case of injury and sickness, and for his neglect in any of those particulars the owner is liable."

In that case the owner was held not liable for the negligence of the master in leaving a hatch open, on the ground:

"That it was no more than negligence in the ordinary navigation of the ship, in which common employment all of the members of the ship's company were engaged."

In this case, the negligence being predicated upon the fact that the captain and the rest of the crew were standing near by and negligently failed to insist upon giving libelant assistance, it must be conceded for the purpose of the allegation that the owners had furnished a sufficient crew. Having furnished such a crew, were the owners bound to see, as various exigencies arose in the navigation of the ship requiring that assistance be given to one of the members of the crew, that the other members should go to his aid? To do so would make each member of the crew the personal representative of the owner, and overthrow every decision that has ever been written on the question. It not being the duty of the owner to see that such assistance was given libelant, the master cannot be said to have been the representative of the owner with respect to such duty, and for his negligence in such respect the vessel cannot be proceeded against in rem.

The allegations of the complaint in reference to negligence in furnishing medical treatment are as follows:

"That at the time libelant was injured as aforesaid the captain of said schooner ordered the same to turn back to Port Angeles, at which port she arrived at 3 o'clock the next morning; that, before landing at Port Angeles, this libelant requested the captain to be taken to Port Townsend; that said captain informed libelant that it would be too much expense to said schooner and that a marine doctor was located at Port Angeles; that, after waiting some four hours at Port Angeles on board of said ship, libelant, against his wish, was taken ashore, where the captain took him to a private doctor and represented to said doctor that he would be paid for his services through the marine hospital; that said doctor took charge of the case, and immediately thereafter the captain of said schooner informed the doctor that he (the libelant) was in the doctor's hands and off his own; that, about 11 o'clock of that same forenoon, this libelant was chloroformed by the doctor, and an attempt was made to set the bones broken; that by reason of the carelessness and negligence of the captain of said ship in turning this libelant, against his desire, over to an inexperienced, incompetent, and unwilling doctor, the work was done in an unskillful and wholly improper manner.

"That after remaining at Port Angeles three days the said doctor requested this libelant to put on his clothes, informing him that the representations, made by the captain to the doctor, regarding his pay, were false, and he

had better go to Port Townsend to the marine hospital; that libelant was unable to move or be moved, and after remaining there several days longer without proper attention he finally went to Port Townsend to the marine hospital; that at the time of arriving at Port Townsend, through the negligence and incompetency of said doctor at Port Angeles, the libelant's arm had become swollen and sore and he was threatened with blood poison; that it was thought impossible by the doctor in charge at said marine hospital to set said bones before treatment was had to reduce the soreness and swelling; that after several days an attempt was made by the physicians and surgeons in said marine hospital at Port Townsend to set the bones, but, owing to the fact that the ends had become infected and lost their power to knit, the work was unsuccessful, and as a result of the treatment received as aforesaid the bones so broken will never knit together, but will be a source of annoyance, pain, and suffering to libelant, and said arm will always be entirely useless; that during all the times herein mentioned the libelant has suffered excruciating pain, humiliation, and inconvenience, at times despairing of his life."

The fourth paragraph of the exceptions is as follows:

"That libelant has no cause of action against the vessel for damages alleged to have resulted from improper treatment of personal injuries sustained as alleged in the libel, by a physician at a port to which the vessel put back to obtain medical and surgical attendance for him, as alleged in the libel."

[2] It is the duty of the owner to furnish an injured seaman with proper medical care, and the master represents the owner with respect to this duty, and the owner is liable for the negligence of the master in that regard. The Iroquois, 194 U. S. 241, 24 Sup. Ct. 640, 48 L. Ed. 955; The Osceola, 189 U. S. 158, 23 Sup. Ct. 483, 47 L. Ed. 760; The Fullerton, 167 Fed. 1, 92 C. C. A. 463; The Sarnia (D. C.) 137 Fed. 952; The Troop (D. C.) 118 Fed. 769; Id., 128 Fed. 857, 63 C. C. A. 584; The Scotland (D. C.) 42 Fed. 925; The M. E. Luckenbach (D. C.) 174 Fed. 265. Where the master employs a physician, is the owner liable in all events for the negligence of that physician, or is he liable only where the master fails to exercise reasonable care in selecting the physician? No case in admiralty which decides that question has been found; it must be determined upon reason and analogy, having regard to the nature and character of the duty imposed.

The duty of an owner to select a competent physician is analogous to the duty of an employer to select competent fellow servants; both are duties imposed by law. It is well settled that the master is held only to the exercise of ordinary and reasonable care in the employment of a fellow servant, and is not an insurer of the competency of such servant. 26 Cyc. 1295.

The owner's duty is also analogous to the duty of an employer to furnish medical attendance in extraordinary cases when it is imperatively demanded or to that of one who collects fees from his employés and undertakes to furnish medical treatment, without making a profit therefrom.

"The master who conducts a hospital for the use of his injured employés, not for the purposes of gain but for charitable purposes merely, is not liable to a servant for injuries caused by the negligence of the physicians or attendants, unless reasonable care was not used in their selection. This is true although the expenses of running the hospital are provided for out of moneys retained from the monthly wages of a company's employés; there

being, however, no intention on the part of the company to make any profit. But where in consideration of a reduction in the rate of wages of all the men employed, and the consequent profit to be made by the company, the latter binds itself to furnish medical treatment to such of them as may get hurt or become sick while in its service, the company should bear the loss of improper treatment, since the law implies in such cases an undertaking to give proper treatment." 20 Am. & Eng. Encyc. of Law, 54.

"It is well settled that a master has performed his entire duty in respect to furnishing medical attention to a servant injured while at work, when he employs a person of ordinary competency and skill in the profession; and, having done so, he cannot be made liable for the carelessness or negligence of the person employed in the performance of his duties. So too where a hospital is maintained by a master for the sole purpose of relieving injured servants, without any intention of profit to himself, he is not liable to his servants for the malpractice of the physician employed, if ordinary care was exercised in selecting him, although the hospital is supported by the contributions of the servants." 26 Cyc. 1082.

The owner's duty cannot be analogous to the obligation of the employer who makes a profit in furnishing medical attendance, for the shipowner makes no profit, and is not required to keep a physician on board the vessel. The duty is one which arises out of and is governed by the circumstances of each particular case, and it is only for the negligence of the owner himself, or the owner's representative, the master, that the vessel can be held. The master is not negligent when he exercises reasonable care in selecting and employs a regularly licensed physician, believing him to be competent, and intrusts the injured seaman to his care, in the belief that such physician will render careful and competent treatment.

The libel does not allege that the master knew of the incompetency of the physician, or that he should have known of such incompetency and failed to exercise reasonable diligence in selecting him. The libel alleges that the master represented to the doctor that he would be paid for his services through the marine hospital, and that three days thereafter the doctor informed libelant that the master's representations were false. There is no allegation that these representations were untrue, or that the doctor manifested any unwillingness to the master to accept such terms of employment; nor are the doctor's statements binding upon the master or the vessel. The libel also alleges that the master took libelant to Port Angeles to a private doctor when libelant had requested to be taken to Port Townsend to the marine hospital. This cannot of itself constitute negligence, since it is manifest that an injured seaman cannot in every instance have the choice of physicians, regardless of expediency or expense. The master's duty to the owner requires that he should take such matters into consideration; and, while the humane duty to the seaman should have the greater weight, the master cannot be said to be negligent when he exercises reasonable diligence in employing a physician whom he believes to be competent to attend to the seaman's injuries. For all that appears in the libel, the master may have believed that the libelant would receive treatment as much calculated to effect a cure from the physician in question as from the marine hospital. Where there is no negligence of the master, the physician's negligence cannot be imputed to him or to the owner, and the vessel cannot be proceeded against in rem.

[3] The owner is liable for the expenses of effecting the cure of a seaman injured in his employ, so far as a cure is possible by ordinary medical means, and this liability exists even where the owner has not been negligent, and may be enforced in rem, and is not relieved by the negligence of the seaman, provided he has not been grossly negligent. The Osceola, 189 U. S. 158, 23 Sup. Ct. 483, 47 L. Ed. 760; The New York, 204 Fed. 764, 123 C. C. A. 214; The City of Alexandria (D. C.) 17 Fed. 390. But the libelant is not seeking to enforce this liability by asking the recovery of expenses necessarily incurred or to be incurred in effecting a cure; there is no allegation in the libel which can be so construed. The third paragraph of the libel reads as follows:

"That he was prior to said injuries an able-bodied, healthy person of the age of 45 years, capable of and was earning the sum of $45 per month and subsistence; that libelant will be to great expense in securing medical and surgical treatment for a long time to come; that ever since said injuries he has been and is now wholly incapacitated, and as he believes will ever be so; that by reason of the matters set forth herein, libelant has been damaged by the respondent in the sum of $14,000."

It is manifest that the allegation "that libelant will be to great expense in securing medical and surgical treatment for a long time to come" is set forth merely as an element of the damages caused by the negligence of the physician, and such prospective expenses are sought to be recovered on that theory alone. The liability of the owner to pay for medical treatment, and his liability to pay damages, of which medical treatment is an element, are two different things. The first liability exists from the fact of injury; the second arises only where the owner is at fault either in causing the injury or its treatment. Even conceding that the owner is liable for expenses to be incurred, there is no allegation which brings libelant within such theory. The liability of the owner is only for expenses in effecting a cure so far as possible, by ordinary medical means; and this does not include extraordinary medical treatment, or treatment which extends after a cure has been as nearly effected as is possible in a particular case. The Kenilworth, 144 Fed. 376, 75 C. C. A. 314, 4 L. R. A. (N. S.) 49, 7 Ann. Cas. 202; The Nyack, 199 Fed. 383, 118 C. C. A. 67.

The exceptions are sustained.